UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON WILLIAMS,<br><br>        Plaintiff,<br><br>        v.<br><br>ANTHONY VERNA, et al.,<br><br>        Defendants. | Case No.: 1:16-cv-00764-AWI-SAB (PC)<br><br>ORDER REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF INTENT TO PROCEED ONLY ON RETALIATION CLAIM<br><br>[ECF No. 1] |

Plaintiff Shannon Williams, a prisoner in the custody of the Federal Bureau of Prisons ("BOP") proceeding pro se filed the instant civil rights action pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) on June 2, 2016.  Plaintiff declined United States Magistrate Judge jurisdiction; therefore, this action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.[1]

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] Plaintiff declined United States Magistrate Jurisdiction on September 6, 2016.  (ECF No. 9.)

1

"frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff names officer Anthony Verna, officer Brown, and Warden Paul Copenhaver, as Defendants.

On May 29, 2014, at approximately 3:20 p.m., Defendants Brown and Verna searched Plaintiff's cell and demanded that he submit to a visual strip search to which Plaintiff complained. Plaintiff complained to several different staff members that officers Brown and Verna were embarrassing him and unnecessarily subjecting him to another visual strip search, after the first search did not reveal any contraband.

Plaintiff submitted to two more strip searches in his cell where he was required to remove his underwear and bend over and spread his butt checks. After Plaintiff complained that officers Brown and Verna were violating policy, they did not allow him to put his clothing on and instead handcuffed him and made him walk in his underwear across the entire unit. As Plaintiff was being escorted through the housing units in only his underwear, several inmates were laughing and whistling at Plaintiff. Plaintiff eventually yelled that he wanted to file a grievance because officers Brown and Verna were sexually embarrassing him because he did not have any drugs on his person.

Plaintiff had just undergone surgery on his testicles, and the front of his underwear was stained with blood and fluid drainage. Plaintiff's testicles were swollen from the surgery. After officer Ochoa informed officer Brown that Plaintiff had surgery on his testicles which caused the swelling, officer Brown responded that Plaintiff could "get dressed when you give us some drugs."

Several female staff members observed Plaintiff as he walked through the prison in only his underwear. Upon arriving at the lieutenant's complex, lieutenant Zaragoza asked officer Verna "[w]ho brought him down here dressed like this? Did Brown do this? Plaintiff answered, "[t]hey both did. And I want to file a grievance right now for them trying to sexually embarrass me and retaliate against me for complaining and not having no [sic] drugs, in my cell." Plaintiff requested that lieutenant Zaragoza allow him to get dressed, and Zaragoza responded "I'm going to take you down to R&D strip you out, get you some boxers and if you don[']t have anything, I'm sending you back to your housing unit." Zaragoza and Verna both conducted a visual strip search of Plaintiff and found no contraband.

Plaintiff was subsequently un-handcuffed and provided a pair of socks, a shirt and a pair of boxers to place over Plaintiff's briefs. Zaragosa informed Plaintiff that he was going to be released back to his housing unit. However, officer Brown (who was previously absent), showed up at R&D, and Zaragoza told Brown, "[w]e just stripped him out he does not have anything, I'm sending him back to the yard." Brown, while smiling, answered back, "I'm telling you Lt. this 'fucker' has big balls, he has something." Lieutenant Zaragosa responded, "I know how to conduct a strip search, he does not have anything. I am absolutely positive of that."

3

Plaintiff then told Zaragosa, "I am telling you they are tripping, they know I did not have nothing they walked me over here handcuffed, in just my draws after they stripped me out like three times in the unit, with six other officers ain[']t nobody saying I had shit but him [Brown] and Verna. This is bullshit I want you to write both of them up for this." Lieutenant Zaragosa shook his head and told Brown and Verna "release him back to his unit," and walked out of the R&D area.

After Zaragosa left, Brown stated "I don[']t care what the Lt. says, I want you to stand on this machine, if you refuse you[']re going to the SHU." Officer Verna then stated, "[g]o ahead and refuse so I can write it up, one way or another you going to the SHU today." After waiting about 20 minutes for the machine to start programming, officer Brown stated, "it does not look like we can get it started." Immediately thereafter, Plaintiff was placed back in handcuffs and transported back to the lieutenant's complex. Upon arrival, lieutenant Zaragosa stated, "I thought I told you two to release him back to his unit, why did you bring him back up here handcuffed? What did you do Williams I told you I was sending you back?" Plaintiff responded, "I did not do shit! They mad [sic] cause I ain[']t have nothing, and brought me back for nothing!"

Plaintiff was placed in a holding cell, and after forty-five minutes to an hour requested to use the restroom, which was denied by officer Verna. After repeated requests to use the restroom, officer Verna told Plaintiff "tell us who has some drugs and I'll let you use the restroom." Plaintiff eventually urinated on himself, and officer Verna laughed. Officer Verna then told officer Brown "lets get him for refusing a UA." Officer Brown told Plaintiff "you[']re going to the SHU for a 100 series refusing a UA test." Plaintiff immediately requested to see lieutenant Zaragosa and yelled that they were "trying to retaliate and cover-up the bullshit yall [sic] did to me. I ain[']t refused no piss test, if that was the case I would not be in handcuffs." Officers Brown and Verna then transported Plaintiff to the SHU for refusing a UA test. Plaintiff told officer Verna, "[t]his is messed up, got me walking around women bleeding and with my draws piss in 'em, I am writing yall [sic] up for this." Verna laughed and told Plaintiff, "[n]ext time inmate you will learn who not to threaten with a grievance."

Plaintiff later received a write-up for refusing a urinalysis test, went to his UDC hearing and to the DHO three weeks later. After approximately five days in the SHU, Plaintiff informed Warden Paul Copenhaver that officers Brown and Verna had fabricated charges against him and walked him

4

virtually naked throughout the facility, while knowing he did not have any contraband on his person, subjecting him to sexual humiliation by making him urinate on himself.  Copenhaver told Plaintiff he could file a grievance and take it up with the DHO hearing officer.

At the DHO hearing, the hearing officer investigated and discovered that Plaintiff was handcuffed the entire time and Defendants refused to remove the handcuffs.  The medical department was contacted and it was discovered that Plaintiff takes a diuretic daily that causes him to urinate throughout the day.  Plaintiff was found to be innocent of the false charges.

On January 4, 2015, after Plaintiff had filed a grievance, officer Verna placed a 4 inch jailhouse shank in Plaintiff's assigned cell and filed a false incident report against Plaintiff stating he found the weapon in the mattress.  In January 2016, officer Verna retaliated against Plaintiff again by writing him up for asking 6B unit officers to watch Verna because he had previously planted evidence in his cell.

At the DHO hearings, Plaintiff informed DHO that officer Verna was planting evidence and filing false charges against him because Plaintiff had previously filed grievances.  The DHO stated there was no proof to support Plaintiff's allegations, and Plaintiff was found guilty of each of the charges.

### III.

### DISCUSSION

#### A.   Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934.  Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

Here, Plaintiff fails to state a cognizable claim against Warden Copenhaver.  The only conduct charged as to Copenhaver is that Plaintiff made him aware of the searches and escort by officers Brown and Verna and was advised to file a grievance and raise his concerns at the rules violation

hearings. Plaintiff fails to set forth sufficient facts to demonstrate that Warden Copenhaver participated in or directed the alleged violations, or knew of the violations and failed to act to prevent them. Accordingly, Plaintiff fails to state a cognizable claim against Warden Copenhaver.

### B. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Based on Plaintiff's allegations, Plaintiff states a cognizable retaliation claim against Defendants Brown and Verna for (1) performing strip searches, forcing Plaintiff to walk through the prison in only his underwear and for issuing false disciplinary charges on May 29, 2014 for refusing to take a urinalysis test. Plaintiff also states a cognizable retaliation claim against Defendant Verna for issuance of false disciplinary charges in January 2016.

### C. Fourth Amendment-Search and Seizure

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails. Bell, 441 U.S. at 558-59 (quotations omitted); Byrd, 629 F.3d at 1141; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332-34. Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Bell, 441 U.S. at 559 (quotations

1  omitted); Byrd, 629 F.3d at 1141; Bull, 595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860
2  F.2d at 332.

3      Although inmates, have a "limited right to bodily privacy," Michenfelder v. Sumner, 860 F.2d
4  328, 333 (9th Cir. 1988), the Eighth Amendment protects inmates from repetitive and harassing
5  searches, and from sexual abuse, Schwenk v. Hartford, 204 F.3d 1187, 1196-1197 (9th Cir. 2000).
6  The Ninth Circuit has recognized that digital rectal searches are highly intrusive and humiliating.
7  Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1998). Prisoners thus have a clearly established right
8  to be free from digital rectal searches conducted for purposes unrelated to legitimate penological
9  concerns. Tribble, 860 F.2d at 325-327. A digital rectal search may violate the Eighth Amendment if
10 it is not reasonably related to any legitimate penological concerns. Id. at 325 n. 6.

11     The Supreme Court has held that visual body cavity searches performed to prevent prisoners'
12 possession of weapons and contraband are reasonable, even in the absence of probable cause. Bell,
13 441 U.S. at 558-560. In addition, the Ninth Circuit has held that visual body cavity searches
14 "involving no touching" are reasonable. Michenfelder, 860 F.2d at 332. "The prisoner bears the
15 burden of showing that prison officials intentionally used exaggerated or excessive means to enforce
16 security in conducting a search." Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997).

17     Plaintiff's allegations fail to give rise to a cognizable claim under the Fourth Amendment.
18 Plaintiff alleges only three visual cavity searches in order to obtain contraband. The fact that Plaintiff
19 may have believed an initial and/or subsequent search was not warranted, such disagreement does not
20 give rise to a constitutional claim under the Fourth Amendment. Plaintiff's conclusory claim that he
21 was subjected to unreasonable searches fails to give rise to a cognizable constitutional violation.

22     **C.    Due Process Right to File Grievance**

23 "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of
24 life, liberty, or property; and those who seek to invoke its procedural protection must establish that one
25 of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not a
26 have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim
27 for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza,
28 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Accordingly, Plaintiff fails to state a cognizable due process violation based on the filing and/or handling of any inmate grievance.

### D. Cruel and Unusual Punishment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's allegations fail to give rise to a claim for cruel and unusual punishment under the Eighth Amendment. Plaintiff's allegations relating to the transportation through the prison facility from his housing unit to the lieutenant's complex and retention in a holding cell and denial of request to use the bathroom facilities do not rise to the level of a constitutional violation. Accordingly, Plaintiff fails to state a cognizable claim for cruel and unusual punishment.

///

**E.     False Charges**

Plaintiff alleges that Defendant Verna falsely charged him with possession of contraband. However, the issuance of a false RVR does not, in and of itself, support a claim under section 1983. See, e.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D.Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D.Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D.Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D.Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d. Cir. 1986)). Accordingly, Plaintiff fails to state a cognizable constitutional violation based on his claim that false charges were initiated against him.

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim against Defendants Brown and Verna for retaliation in violation of the First Amendment. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claim under the First Amendment against Defendants Brown and Verna, Plaintiff may so notify the Court in writing, and the Court will dismiss the other claims and Defendants, and will forward

Plaintiff two (2) summonses and two (2) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

///

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff an amended civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Brown and Verna for retaliation in violation of the First Amendment; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **September 29, 2016**                              _____
                                                                                          UNITED STATES MAGISTRATE JUDGE